## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
                          :
ILEAN JACKSON,                  :
                          :
         Plaintiff,            :
                          :             Civil Action No. 08-3635 (JAG)
             v.              :
                          :                  **OPINION**
MICHEAL J. ASTRUE,       :
COMMISSIONER OF SOCIAL   :
SECURITY,                  :
                          :
         Defendant.          :
———————————————————:

### GREENAWAY, JR., U.S.D.J.

Plaintiff, Ilean Jackson ("Plaintiff"), pursuant to 42 U.S.C. §405(g),[1] seeks review of the

Social Security Commissioner's (the "Commissioner") decision denying her application for

Supplemental Security Income ("SSI")[2] and Disability Insurance Benefits ("DIB").[3] Plaintiff

asserts that the Commissioner's decision is not supported by substantial evidence, as required by

---

[1]  This section of the Social Security Act (the "Act") provides that any individual who was a party to a hearing before the Secretary may commence a civil action within 60 days after the Secretary's final determination.  The appropriate forum for this action is the district court of the United States judicial district, in which Plaintiff resides.  42 U.S.C. § 405(g).

[2]  Supplemental Security Income is a national program that provides supplemental security income to individuals who have attained age 65, or are blind or disabled.  42 U.S.C. § 1381.

[3]  Disability Insurance Benefits are awarded only when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  20 C.F.R. § 404.1520.

§ 405(g), and that the Commissioner erred in law and in fact when denying Plaintiff's applications.  For reasons set forth below, this Court finds that the Commissioner's decision is supported by substantial evidence and shall be affirmed.

## I. PROCEDURAL HISTORY

On March 5, 1996, Plaintiff filed an application for DIB and SSI, claiming disability due to high blood pressure, substance abuse, liver problems, hepatitis B, and breathing problems. (Tr.[4] 11.)  Subsequently, Plaintiff's applications were denied at both the initial and reconsideration levels.  (Tr. 60-77, 86-99; Compl. ¶ 5.)  On October 1, 1997, Plaintiff timely filed a request for a hearing before an administrative law judge.  (Tr. 305-09.)  Plaintiff appeared before Administrative Law Judge Michael H. Noorigian ("ALJ Noorigian").  (Id.)  On April 29, 1998, ALJ Noorigian issued a decision, finding that Plaintiff was not disabled as of November 29, 1994.  (Tr. 8-18; Compl. ¶ 5.)  Plaintiff sought review by the Appeals Council (the "Council").  (Tr. 6-7; Compl. ¶ 6.)  On December 2, 2002, the Council remanded the case for further administrative proceedings.[5]  The Council determined that Plaintiff's file would benefit from further development (Id.)

On April 2, 2003, ALJ Noorigian held a hearing, pursuant to the Council's remand.

_____

[4]  The Act instructs the Secretary to file, as part of the answer, a certified copy of the transcript of the record, including any evidence used to formulate the conclusion or decision.  42 U.S.C. § 405(g). "Tr." refers to said transcript.

[5]  The office of the Appeals Council found that "[a] careful review of the record reveals that although [ALJ Noorigian's decision] acknowledged that the claimant appeared 'lethargic and tired' at the hearing, [he] concluded that complaints expressed at the hearing were not related [to] complaints expressed to the claimant's medical providers. The residual functional capacity finding of sedentary work appears to be based on [a physician's] medical assessment. The doctor's opinion, however, is unclear as to whether the claimant met all the exertional requirements to perform the full range of sedentary work."  (Tr. 356.)

2

(Tr. 358; Compl. ¶ 6.)  On June 24, 2003, ALJ Noorigian again found that Plaintiff was not

disabled.  (Tr. 346-56; Compl. ¶ 6.)  Plaintiff appealed ALJ Noorigian's decision a second time.

(Tr. 338-42.) On September 11, 2004, the Council determined that it lacked jurisdiction to

review ALJ Noorigian's decision.  (Tr. 335-42.)  On September 7, 2006, however, the Council

remanded the case after determining that ALJ Noorigian's ruling did not: use substantial

evidence to come to his decision; properly assess the Acquiescence Ruling 01-01(3); properly

assess her residual functional capacity ("RFC");[6] or properly assess Plaintiff's subjective

complaints of pain.  (Tr. 441-43; Compl. ¶ 6.)

On January 23, 2007, Plaintiff appeared before Administrative Law Judge Richard L.

DeSteno ("ALJ DeSteno") for a third hearing. (Id.)  On January 25, 2007, ALJ DeSteno

determined that Plaintiff had an RFC of sedentary work,[7] and was, therefore, ineligible for DIB

and SSI.  (Tr. 417-18.)  ALJ DeSteno made the following findings:

1.  The claimant met the disability insured status requirements of the Act on November 29, 1995, the date the claimant stated she became unable to work, and continued to meet them through March 31, 2000, but not thereafter.

2.  The claimant did not engage in substantial activity during the period at issue.

3.  The medical evidence establishes that the claimant had a mood disorder, which did not impose any significant work-related limitations, and, therefore, was "not severe". The claimant also has a combination of severe impairments including hypertension and obesity, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

---

[6] RFC is an assessment to determine what work activities the claimant can perform despite his or her impairment(s). 20 C.F.R. § 404.1545(a).

[7] Sedentary work pertains to "a condition of inaction, such as work or recreation that can be performed in a sitting posture." MOSBY'S MEDICAL, NURSING & ALLIED HEALTH DICTIONARY 1554 (6th ed. 2002) [hereinafter "MOSBY'S"].

4.      The claimant's allegations were evaluated under the criteria established in Social Security Ruling 96-7p, as well as 20 C.F.R. §§ 404.1529 and 416.929, and cannot be accepted as fully credible in light of the total record.

5.      The claimant had the residual functional capacity during the period at issue, to perform work involving lifting and carrying objects weighing up to 10 pounds; sitting up to six hours, and standing and walking up to two hours in an eight-hour day; not requiring prolonged walking/standing; not requiring frequent bending, reaching, climbing, stooping, squatting, and pushing/pulling of leg and arm controls; and not involving exposure to dust, gases, fumes, and other pulmonary irritants (20 C.F.R. §§ 404.1545 and 416.945).

6.      The claimant was unable to perform her past relevant work as a teacher's aide.

7.      The claimant's residual functional capacity for the full range of sedentary work is reduced by the above-enumerated non-exertional limitations.

8.      The claimant was a "younger individual" during the period at issue (20 C.F.R. §§ 404.1563 and 416.963).

9.      The claimant has a "limited" (eleventh grade) education (20 C.F.R. §§ 404.1564 and 416.964).

10.     Based on an exertional capacity for sedentary work, and the claimant's age, education, and past work experience, Section 404.1569 of Regulations No. 4 and Section 416.969 of Regulations No. 16 and Rule 201.18, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled".

(Tr. 419.)

Based on these findings, ALJ DeSteno concluded that Plaintiff was "not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Social Security Income payments under Sections 1602 and 1614(a)(3)(A), respectively, of the Social Security Act for the time period [in question]." (Tr. 420.)  On April 18, 2008, Plaintiff sought review by the Appeals Council.  (Tr. 403.)  On May 29, 2008, the Council upheld ALJ DeSteno's decision.  (Tr. 403-05; Compl. ¶ 8.)  On July 21, 2008, Plaintiff sought review in this Court.  (Docket Entry No. 1.)

## II. STATEMENT OF FACTS

### A.     Background

Plaintiff Ilean Jackson was born July 17, 1953.  (Tr. 25, 56.)  She has a eleventh grade education.  (Tr. 26.)  From 1990 to 1994, she worked as a teacher's aide at a child care facility.  (Tr. 27, 121-23.)  Previously, Plaintiff worked as a shipping supervisor.  (Tr. 28-29, 121-23.)  During her tenure as a shipping supervisor, Plaintiff supervised assembly line workers, and occasionally worked on the assembly line herself.[8]  (Id.)

At the October 1, 1997 hearing before ALJ Noorigian, Plaintiff complained of heart problems and swelling to her face, hands, legs, and feet.  (Tr. 32, 35.)  Plaintiff also complained of memory problems.  (Tr. 34.)  Plaintiff stated that she has pain in her back, which requires the use of a cane.  (Tr. 35, 41.)  She further testified at the hearing that she takes medication for depression and she becomes fatigued.  (Tr. 43.)   Plaintiff stated that she had breathing problems and hepatitis B.  (Tr. 45.)  Plaintiff testified that she had difficulty walking more than a block or standing five to ten minutes before her feet swell.  (Tr. 34.)

### B.     Medical Evidence

#### 1.     Newark Beth Israel Medical Center

From November 30, 1994 to December 6, 2004, Plaintiff was admitted to Newark Beth Israel Medical Center for hypertension[9] and probable heart failure.  (Tr. 125-64.)   A thallium

---

[8] Plaintiff described her line work as requiring packing and pulling of packages and placing them on a conveyor belt.  (Tr. 28-29.)  The supervisory component of the job was performed in an office, from a seated position.  (Tr. 28-30.)

[9] Hypertension is a "common disorder characterized by elevated blood pressure persistently exceeding 140/90 mm Hg. . . . Known causes of secondary hypertension include adrenal disorders such as aldosteronism, Cushing syndrome, and pheochromocytoma;

5

study, performed on Plaintiff, revealed "diffusely increased activity in both lung fields." (Tr. 139.) On December 4, 1994, Dr. Monroe Karetzky reported the results of Plaintiff's radiologic consultation, stating that Plaintiff did not have an enlarged heart, but had "mild central pulmonary venous prominence associated with bilateral atelactic changes." (Tr. 142.) On December 6, 1994, Plaintiff was discharged to the outpatient clinic, in an improved condition. (Tr. 126-27.)

### 2.     University Hospital and Dr. Oruwari

On March 28, 1995, Plaintiff had burning chest pains and was brought to the emergency room of University Hospital by an ambulance. (Tr. 165-72.) Plaintiff was admitted to University Hospital on November 6, 1996 for dyspnea[10] and acidosis[11]. (Tr. 244-53.) Plaintiff was also treated as an outpatient at the University Hospital.[12] (Tr. 168-72, 314-29.)

On July 9, 1997, Dr. Oruwari, a treating physician at the outpatient clinic, diagnosed Plaintiff with congestive heart failure secondary to hypertension. (Tr. 330.) Dr. Oruwari advised Plaintiff that she could not participate in "exertional duties." (Id.) On February 19, 1998, Dr. Oruwari completed a "Medical Assessment of Ability To Do Work-Related Activities." (Tr.

---

thyrotoxicosis; preeclampsia; and chronic glomerulonephritis and other renal diseases." MOSBY'S 849.

[10] Dyspnea is a "distressful sensation of uncomfortable breathing that may be caused by certain heart conditions, strenuous exercise, or anxiety." MOSBY'S 563.

[11] Acidosis is an "abnormal increase in hydrogen ion concentration in the body, resulting from an accumulation of an acid or the loss of a base. It is indicated by a blood pH below the normal range (7.35 to 7.45)." MOSBY'S 19.

[12] Records between June 1995 and April 1997 revealed missed appointments. (Tr. 168-72, 314-29.) Plaintiff testified that she has missed appointments because of her poor memory. (Tr. 53.)

332-34.)  Dr. Oruwari reported that Plaintiff could lift "maybe twenty pounds."  (Tr. 332.)

Doctor Oruwari also found that Plaintiff could stand a total of one hour, and that she could sit

without limitation, but that she could only occasionally climb, balance, stoop, crouch, or kneel.

(Tr. 332-34.)  Plaintiff's ability to push and pull was limited.  (Id.)  Dr. Oruwari concluded that

Plaintiff suffered from congestive heart failure, obesity, and hypertension.  (Tr. 332.)

> 3.     **University of Medicine and Dentistry of New Jersey**

On February 28, 2003, Plaintiff underwent an initial evaluation at University of

Behavioral Healthcare, a division of the University of Medicine and Dentistry of New Jersey.

(Tr. 373.)  After being examined by Dr. Stephanie Brown, Plaintiff was diagnosed with various

physical and mental health problems.  (Tr. 373, 379.)  Dr. Brown noted that Plaintiff's memory

and insight were "poor."  (Tr. 378.)  According to Dr. Brown, during the evaluation, Plaintiff

exhibited violent behavior.  (Tr. 373.)  Dr. Brown also noted that Plaintiff vandalized and

flooded her apartment.  (Tr. 374.)

> 4.     **Dr. Carl Nolte**

On April 20, 1996, Plaintiff was referred for disability evaluation by the State of New

Jersey.  (Tr. 173.)  Dr. Nolte, an examining physician for the State of New Jersey, noted that

Plaintiff could not afford her prescribed medications.  (Tr. 175.)  Dr. Nolte's physical

examination revealed the following: blood pressure of 190/120; assistance needed for dressing

and undressing; a widened stance and slow gait; slow, slurred, and halting speech; somewhat

impaired memory; restricted movement; reduced motor skills; difficulty heel and toe walking;

and "massively obese" extremities.  (Tr. 176-79.)

Dr. Nolte opined that Plaintiff could stand or walk a total of two to three hours per day,

7

but no more than fifteen minutes in one sitting.  (Tr. 180.)  Dr. Nolte found that Plaintiff could sit

for a total of six to seven hours per day, but for no more than one hour at a time.  (Id.)  Dr. Nolte

further determined that due to Plaintiff's "history of uncontrolled sleep during the day," Plaintiff

would not likely be able to respond appropriately "to supervision or customary work pressure in a

routine work setting."  (Id.)  Dr. Nolte advised that Plaintiff should avoid temperature extremes,

pulmonary irritants, physical exertion, humidity and emotional stress.  (Id.)  Following the

examination, Dr. Nolte sent Plaintiff  to the emergency room.  (Id.)

     **5.**     **Essex Substance Abuse Clinic**

Records from the Essex Substance Abuse clinic span the period from March 1989

through January 1997.  (Tr. 188-243, 254-56, 289-304.)  These records show the dispensing of

methadone maintenance.  (Id.)  Further, they document Plaintiff's persistent complaints,

including swelling, pain, difficulty breathing, and sleeplessness.  (Id.)  The records also revealed

continued elevated blood pressure readings and hepatitis B and C.  (Id.)

     **6.**     **Plaintiff's Testimony at ALJ Hearing**

In the administrative hearing held on October 1, 1997, Plaintiff testified that she stopped

working as a teacher's aide around November 1994, due to her persistent health problems and

hospital visits.  (Tr. 26, 27.)  She complained that her feet, face, hands, and legs would swell

while she was working.  (Tr. 32.)  Plaintiff stated that the swelling was the result of standing and

walking for extended periods of time.  (Tr. 33, 34.)

## III. DISCUSSION

### A.      Standard of Review

This Court has jurisdiction to review the Commissioner's decision, pursuant to 42 U.S.C.

§ 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Servs.,

841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence "is more

than a mere scintilla of evidence but may be less than a preponderance."  Brown v. Bowen, 845

F.2d 1211, 1213 (3d Cir. 1988).  The reviewing court must consider the totality of the evidence

and then determine whether there is substantial evidence to support the Commissioner's decision.

See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."

Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v.

Shalala, 507 U.S. 924 (1993).

In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

[and] (4) the claimant's educational background, work history and present age."  Blalock v.

Richardson, 483 F.2d 773, 776 (4th Cir. 1973); see also Curtin v. Harris, 508 F. Supp. 791, 793

(D.N.J. 1981) (citing Blalock, 483 F.2d at 776). Where there is substantial evidence to support

9

the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at 775.

**B.**     **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and is aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).

Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002).  Finally, while subjective complaints of pain are considered, they alone are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as a disability if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**     **The Five Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  At the first step of the review, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity.[13]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant suffers from a severe impairment.  20 C.F.R. § 404.1520(a)(ii)(c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  See id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Listings").  See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, she will be found disabled under the Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which impairment from Listings might apply, and then give reasons why those impairments are not met or equaled. In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in

---

[13] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient

development of the record and explanation of findings to permit meaningful review."  (Id.)  An

ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and

then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze

the most relevant Listing."  Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir.

2005).

Step four requires the ALJ to consider whether the claimant retains the RFC to perform

her past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform her past

relevant work, she will not be found disabled under the Act.  The Third Circuit has set forth the

following analysis:

> In step four, the ALJ must determine whether a claimant's residual functional
> capacity enables her to perform her past relevant work.  This step involves three
> substeps: (1) the ALJ must make specific findings of fact as to the claimant's
> residual functional capacity; (2) the ALJ must make findings of the physical and
> mental demands of the claimant's past relevant work; and (3) the ALJ must
> compare the residual functional capacity to the past relevant work to determine
> whether claimant has the level of capability needed to perform the past relevant
> work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume her past work, and her condition is

deemed "severe," yet is not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

demonstrate that there are other jobs existing in significant numbers in the national economy,

which the claimant can perform, consistent with her medical impairments, age, education, past

work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds

a significant number of jobs that the claimant can perform, she will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2 to meet the  burden of establishing the existence of jobs in the national economy.  These guidelines dictate a finding of "disabled" or "not disabled" based on different  combinations of vocational factors, such as age, education level, work history, and residual functional capacity.  These guidelines reflect the administrative notice taken of the jobs in the national economy that exist for particular combinations of vocational factors.  20 C.F.R. pt. 404, subpt. P, app. 2, para. 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in the Medical-Vocational Guidelines, the guidelines direct a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458, 462 (1983).  The claimant may rebut any finding of fact as to a vocational factor. 20 C.F.R. pt. 404, subpt. P, app. 2, para. 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003).  However, the burden still remains on the claimant to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, No. 02-3714, 2003 WL 22016801, at *2 (E.D. Pa. June 10, 2003) (stating

that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit has applied the procedural requirements established under Burnett and Jones,  to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.      Subjective Complaints of Pain**

An ALJ may not ignore a claimant's subjective complaints of pain when evaluating a disability claim.  Dorf v. Bowen, 794 F.2d 896, 902 (3d Cir. 1986).  Although there must be objective medical evidence of a condition which could produce pain, objective evidence of pain itself is not required.  Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984).  The Third Circuit requires:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain "may support a claim for disability benefits" and "may be disabling;" (3) that when such complaints are supported by medical evidence, they should be given great weight; (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (citations omitted).  An individual's description of her pain or symptoms, although relevant, is not conclusive in itself.  42 U.S.C. § 423(d)(5)(A); see also 20 C.F.R. § 404.1529(b) (stating that symptoms alone "will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory

14

findings show that a medically determinable impairment(s) is present"); Sassone v. Comm'r of

Soc. Sec., 165 F. App'x 954, 956 (3d Cir. 2006).

E.      **Seven Part Test for Considering Pain**

According to Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.929, the

seven factors used to evaluate a claimant's allegation of pain are: (1) the extent of daily activities;

(2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating

and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication;

(5) treatment other than medication for the symptoms; (6) measures used to relieve pain or other

symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or

other symptoms.  Canales v. Barnhart, 308 F. Supp. 2d 523, 527 (E.D. Pa. 2004).

F.      **Weight Accorded to Evidence**

The Secretary considers all submitted opinions to evaluate a claim for disability benefits.

If the medical evidence presented is inconsistent, then different pieces of evidence will be

accorded different weights in order to reach a decision.  See 20 C.F.R. § 404.1527.  The highest

quantum of weight is accorded to medical opinions of the treating physicians.  In reviewing a

decision by the Secretary, "a court gives greater weight to the findings of a treating physician

than to the findings of a physician who has examined a claimant only once or not at all."  Mason

v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  Controlling weight is given when a treating

physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence."  20 C.F.R.

§ 404.1527(d)(2).  When a treating physician's opinion is not "well supported," however, the

length and frequency of treatment is considered.  The more frequently examined and closely

followed a claimant has been, the greater the weight his attending doctor's opinion will carry.

Also, generally, the more evidence produced in support of a medical opinion and the more

consistent it is with the entire record, the greater the weight it will receive, regardless of whether the physician is a specialist.  20 C.F.R. §§ 404.1527(d)(3)-(5).

**G.**   **ALJ DeSteno's Findings**

ALJ DeSteno performed the five step evaluation, and concluded that Plaintiff was not disabled, as defined by the Act.  (Tr. 413-20.)  His findings and conclusions are as follows:

**1.**   **Step One**

ALJ DeSteno concluded that the Plaintiff had not engaged in substantial gainful employment since her alleged onset date of November 29, 1995.  (Tr. 414.)  ALJ DeSteno based his finding on Plaintiff's testimony that she has not worked since November 29, 1995.  (Id.)  Her lack of substantial earnings supported that claim.  (Id.)

**2.**   **Step Two**

ALJ DeSteno found that Plaintiff's hypertension and obesity did not qualify as severe impairments within the meaning of the Act.  (Tr. 415.)

**3.**   **Step Three**

Based on the medical evidence presented, ALJ DeSteno reasoned that Plaintiff had hypertension and obesity, which did not meet or medically equal any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  (Tr. 414.)

**4.**   **Step Four**

ALJ DeSteno found that Plaintiff had an RFC for sedentary work.  (Tr. 418.)  This assessment was based on ALJ DeSteno's review of the medical assessments conducted by Dr. Nolte and Dr. Oruwari,[14] Plaintiff's treatment records from the Essex Substance Clinic and Beth Israel Hospital, and Plaintiff's subjective complaints of pain.  (Tr. 415-18.)  ALJ DeSteno

---

[14]ALJ DeSteno discounted much of the medical assessments of both Drs. Oruwari and Nolte, because he found each doctor's findings to be unsupported by clinical data.  (Tr. 416-17.)

concluded that Plaintiff was capable of only performing sedentary work.  (Tr. 418.)  Plaintiff

could not perform the light work required by her previous job as a teacher's aide.  (Id.)

     **5.**     **Step Five**

     ALJ DeSteno found that "[c]onsidering the claimant's age**,** education, work experience,

and residual functional capacity, there are jobs that exist in the national economy that the

claimant can perform."  (Tr. 418.)  ALJ DeSteno based this determination on the testimony of

Rocco J. Meola, a vocational expert.  (Id.)

<h3 style="text-align:center">IV. ANALYSIS</h3>

     Plaintiff contends that ALJ DeSteno's decision should be reversed because "he failed to

properly evaluate the medical evidence."  (Brief in Support of Plaintiff Ilean Jackson [hereinafter

"Pl. Br."] 8-14)  Alternatively, Plaintiff argues that the case should be remanded because the

ALJ's proceedings, followed by a decision, did not comply with Third Circuit and regulatory

law.  (Pl. Br. 14.)  Plaintiff contends that ALJ DeSteno's RFC assessment is unsubstantiated by

the medical evidence as a whole.  (Pl. Br. 9, 10.)  Plaintiff argues that ALJ DeSteno did not give

consideration to the Plaintiff's subjective complaints of pain, as required by the Third Circuit.

(Pl. Br. 11.)  This Court finds that there is substantial evidence to support ALJ DeSteno's

determination and his determination shall be affirmed.

     Plaintiff argues that the ALJ's RFC determination was not based on substantial evidence,

including Plaintiff's medical history, subjective complaints, and expert vocational testimony.

(Pl. Br. 10.)  Plaintiff contends that ALJ DeSteno "failed to weigh the medical evidence in

accordance with the Regulations," outrightly rejected Plaintiff's subjective complaints of pain,

and largely disregarded the expert vocational testimony when making his RFC assessment.  (Pl.

Br. 9-13.)

This argument is not supported by the ALJ's opinion. ALJ DeSteno determined that Plaintiff had the requisite RFC to perform the full range of sedentary work activity only "after careful consideration of the entire record." (Tr. 419.) The ALJ considered all the objective medical evidence and other evidence, which were consistent with the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-5p and 96-7p. (Id.)

In support of these conclusions, ALJ DeSteno's written decision details the progression of Plaintiff's alleged disability. (Tr. 413-20.) The opinion reflects consideration of the objective medical facts, medical opinions, and Plaintiff subjective complaints, as well as her educational background work, work history, and present age. (Tr. 414-20.)

Plaintiff argues that ALJ DeSteno did not base his findings on the medical evidence, subjective complaints, expert testimony, and failed to weigh the medical evidence in accordance to the regulations. In contrast, consideration of the opinion reveals a specific analysis of all medical evidence. (Tr. 415.) For example, ALJ DeSteno notes that Dr. Nolte performed a pulmonary function test, which revealed only a moderate restrictive ventilatory defect. (Tr. 415.) Also, Dr. Nolte's examination revealed that Plaintiff weighed 251 pounds, but to be considered obese under the Listings, Plaintiff must weigh at least 274 pounds for her height. (Id.). Plaintiff's impairments were "not severe" enough to rise to the requisite level of impairment, as listed in the Act. (Id.) ALJ DeSteno's findings were supported by the record.

ALJ DeSteno also considered Plaintiff's subjective complaints of pain. (Tr. 416.) In doing so, the ALJ evaluated the objective evidence and the credibility of Plaintiff's testimony. (Id.) For example, Plaintiff testified that she was taking ten different medications, but there was no evidence that any medication had been dispensed to Plaintiff. (Id.)

This Court is "bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Upon this record, this

Court finds it unnecessary to remand this matter.  This Court finds that the ALJ DeSteno's decision was substantially supported by the objective medical evidence.  Any allegation that ALJ DeSteno failed to weigh the medical evidence in accordance with the Regulations is unfounded.

## V. CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence.  Therefore, this Court affirms the Commissioner's findings below.


Dated: September 29, 2009

                                            S/Joseph A. Greenaway, Jr.
                                            JOSEPH A. GREENAWAY, JR., U.S.D.J.